IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| IN RE: | * | |
| MICHAEL JEROME CARTER, | * | CHAPTER 13 |
| Debtor, | * | CASE NO. 06-30864-RFH |
| _____ | * | |
| GMAC, | * | |
| Movant/Appellant, | * | |
| vs. | * | |
| | * | CASE NO. 3:07-CV-50(CDL) |
| MICHAEL JEROME CARTER, | * | |
| Respondent/Appellee. | * | |

O R D E R

This bankruptcy appeal arises from the confirmation of Michael Jerome Carter's Chapter 13 bankruptcy plan. GMAC objected to the confirmation of Carter's plan because it allowed Carter to surrender a motor vehicle in full satisfaction of GMAC's allowed secured claim. The bankruptcy court overruled the objection and confirmed the plan. GMAC appeals that ruling. For the following reasons, this Court affirms the ruling of the bankruptcy court.

STANDARD OF REVIEW

This Court reviews the bankruptcy court's legal conclusions *de novo* and the bankruptcy court's findings of fact for clear error.

1

Fed. R. Bankr. P. 8013; *Unsecured Creditors Comm. v. Webb & Daniel*, 204 B.R. 830, 832 (M.D. Ga. 1997).

## BACKGROUND

The material facts of this appeal are not in dispute. On May 10, 2006, Carter purchased a 2006 Chevrolet Impala ("the Vehicle") for his personal use. GMAC financed the purchase and retained a purchase money security interest in the Vehicle. Approximately six months later, on November 15, 2006, Carter filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code.[1] At the time Carter filed his petition, he was indebted to GMAC in the amount of $31,013.32. The value of the Vehicle, however, was less than the full amount Carter owed to GMAC.[2]

Carter's Chapter 13 repayment plan proposed that Carter surrender the Vehicle to GMAC in full satisfaction of GMAC's claim, pursuant to 11 U.S.C. § 1325(a)(5)(C). The Plan also provided for 100% satisfaction of Carter's unsecured debts, which did not include any remaining deficiency owed to GMAC after the sale of the Vehicle. GMAC filed an objection to confirmation of the Plan, arguing that it "does not comply with the provisions of § 1325" and that the "deficiency, if any, should be allowed as a general unsecured claim"

---

[1] The parties agree that Carter's debt to GMAC "was incurred within the 910-day [period] preceding the date of the filing of the [bankruptcy] petition[.]" 11 U.S.C. § 1325(a).

[2] GMAC filed its proof of secured claim on December 5, 2006. On April 17, 2007, GMAC reduced the amount of its claim to $14,670.53, which is the amount of deficiency remaining after the sale of the Vehicle.

2

under 11 U.S.C. § 506(a). (Objection to Confirmation ¶¶ 3, 4, January 4, 2007.) By order dated March 29, 2007, the bankruptcy court overruled GMAC's objection.[3] GMAC now appeals, arguing that it is entitled to recover the $14,670.53 deficiency as an unsecured claim.

## DISCUSSION

The legal issue presently before the Court is whether the bankruptcy court erroneously confirmed Carter's Chapter 13 plan permitting him to surrender the Vehicle in full satisfaction of GMAC's allowed secured claim. Since the relevant part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective on October 17, 2005, and since Carter filed his Chapter 13 petition on November 16, 2006, this case is governed by BAPCPA.

## I. Relevant Provisions of the Bankruptcy Code

Section 1325(a) establishes the prerequisites for a confirmable Chapter 13 plan. In order to obtain confirmation of a plan involving an allowed secured claim, the debtor must accommodate that claim in one of three ways. First, "the holder of such claim [may] accept[] the plan." 11 U.S.C. § 1325(a)(5)(A). Second, if the debtor wishes to retain the collateral, the plan must provide for distributions to the lien holder in an amount not less than the allowed amount of the

---

[3]The bankruptcy court entered a separate order confirming the Plan on April 3, 2007.

3

secured claim. *Id.* § 1325(a)(5)(B). Finally, the plan may provide for the debtor to surrender the secured property to the lien holder. *Id.* § 1325(a)(5)(C).

Section 506 of the Bankruptcy Code governs the secured status of a creditor's allowed claim. This provision generally permits a creditor to divide an allowed claim into secured and unsecured portions:

> An allowed claim of a creditor secured by a lien on property in which the [bankruptcy] estate has an interest . . . is a *secured* claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an *unsecured* claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1) (emphasis added). Pre-BAPCPA, if a debtor chose to retain collateral and accommodate the creditor under § 1325(a)(5)(B), "he could use § 506(a) to 'cramdown' the debt by paying the value of the collateral as a secured claim through his plan, while paying the unsecured portion as an unsecured claim pro rata with other unsecured creditors." *In re Brown*, 346 B.R. 868, 872 (Bankr. N.D. Fla. 2006). If the debtor chose to surrender the collateral pursuant to § 1325(a)(5)(C), the creditor could file an unsecured claim for any deficiency remaining after the sale of the collateral.

The BAPCPA amendments limited the availability of § 506 bifurcation by adding an "unnumbered" or "hanging" paragraph to the end of § 1325(a). This paragraph provides that,

4

> [f]or purposes of subparagraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor [1] has a purchase money security interest securing the debt that is the subject of the claim, [2] the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and [3] the collateral for that debt consists of a motor vehicle . . . acquired for personal use of the debtor[.]

11 U.S.C. § 1325(a). These post-BAPCPA claims, in which "§ 506(a) vanishes from the picture," are commonly referred to as "910-claims." *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007); *In re Ezell*, 338 B.R. 330, 342 (Bankr. E.D. Tenn. 2006). In effect, the Hanging Paragraph "precludes the use of . . . § 506(a) to reduce or bifurcate [a 910-]claim into secured and unsecured components[, and] . . . the creditor's allowed secured claim is fixed at the amount at which the claim is filed." *In re Moon*, 359 B.R. 329, 331 (Bankr. N.D. Ala. 2007).

In this case, the bankruptcy court determined that the Hanging Paragraph in § 1325(a) unambiguously eliminates § 506(a) bifurcation of all 910-claims, thereby rendering such claims fully secured. The court further determined that a Chapter 13 plan providing for surrender of collateral in full satisfaction of a fully secured 910-claim complies with § 1325(a)(5)(C).[4] GMAC contends, however, that

---

[4] The bankruptcy court's order overruling GMAC's objection to confirmation simply states that its ruling was "[b]ased upon the decision rendered in open court on the 27th day of March, 2007[.]" (Bankr. Order 1, March 29, 2007.) In open court, the bankruptcy court ruled that "given the reasoning in the *Bivins* case, I'll overrule the objection that was filed by GMAC." (Bankr. Hr'g Tr. 7:13-14, March 27, 2007.) In *In re Bivins*, No. 06-51778, 2007 WL 624385 (Bankr. M.D. Ga. Feb. 23, 2007), the court found:

5

it retained its pre-BAPCPA bifurcation rights because the Hanging Paragraph does not expressly foreclose its ability to file an unsecured deficiency claim. Thus, "[t]he outcome in this case turns on the Court's interpretation of the Hanging Paragraph and its application." *Brown*, 346 B.R. at 874.

## II. Statutory Analysis

As with any case involving statutory interpretation, the Court begins its analysis with the language of the statute. "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). The mere fact that a statute "is awkward, and even ungrammatical[,] . . . does not make it ambiguous on the point at issue." *Id.* It is not the function of courts "to cure problems in the operation of statutory schemes Congress has designed," and "'[c]ourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement[.]'" *In re Bracewell*,

---

> Allowing the secured creditor to assert a deficiency claim . . . would permit the very thing which the [H]anging [P]aragraph prohibits, which is bifurcation of the claim. Denial of the deficiency claim upon surrender recognizes the claim as fully secured, a result consistent with the outcome when the debtor chooses to retain the collateral and pay the claim.

*Id.* at \*3 (quoting *In re Nicely*, 349 B.R. 600, 603 (Bankr. W.D. Mo. 2006)).

6

454 F.3d 1234, 1246 (11th Cir. 2006) (quoting *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398 (1984)) (first alteration in original).

The plain language of the Hanging Paragraph is not ambiguous: It clearly states that § 506(a) "shall not apply" to a 910-claim.[5] The language of this paragraph does not differentiate between claims against debtors who choose to retain collateral, pursuant to § 1325(a)(5)(B), and those who opt for surrender, pursuant to § 1325(a)(5)(C). If Congress intended for the limitations of the Hanging Paragraph to apply to § 1325(a)(5)(B) alone, rather than § 1325(a)(5) as a whole, it could have drafted such a limitation into the language of the statute.[6] Courts "must presume that Congress said

---

[5] GMAC argues that "[i]t is a mistake to assume . . . that § 506 is the *only* source of authority for a deficiency judgment" because "'[c]reditors don't need § 506 to create, allow or recognize security interests, which rest on contracts (and the UCC) rather than federal law.'" (Reply Br. of Appellant GMAC 1, 2 (quoting *Wright*, 492 F.3d at 832, 833 (emphasis in original).) However, "[t]he Bankruptcy Code is federal law that preempts state law where such laws conflict[,]" *Brown*, 346 B.R. at 876, and "§ 506 is not a definitional provision, but a substantive one that provides the only mechanism, within the confines of the [Bankruptcy] Code, wherein an allowed secured claim is determined." *In re Green*, 348 B.R. 601, 606 (Bankr. M.D. Ga. 2006). "State law may define and create property interests, but it is the function of the [Bankruptcy] Code to determine their treatment in bankruptcy." *Id.*

[6] GMAC also argues that "BAPCPA . . . did not change the rights of [a] creditor when the collateral is surrendered pursuant to § 1325(a)(5)(C)," and "[u]nder pre-BAPCPA law, a Chapter 13 debtor could not surrender collateral securing a debt in full satisfaction [of] that debt." (Br. of Appellant GMAC 11.) It is universally accepted, however, that the 2005 amendments altered a *debtor's* pre-BAPCPA right to retain collateral and "cramdown" the under-secured portion of the debt as an unsecured claim. *In re Quick*, 371 B.R. 459, 462 (B.A.P. 10th Cir. 2007). Now, pursuant to the Hanging Paragraph, a debtor "must pay the entire amount owed to the creditor in order to retain 910 collateral." *Id.* Despite GMAC's arguments to the contrary, there is no reason to assume that Congress

7

what it meant and meant what it said." *U.S. v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (citation omitted). Thus, post-BAPCPA, a 910-claim is not subject to bifurcation whether or not the debtor chooses to retain collateral.

Having found that the language of the Hanging Paragraph is unambiguous, the Court must apply it as written. Even if the Court resorted to an examination of the statute's legislative history for enlightenment, that legislative history does not support GMAC's interpretation of the statute. The sparse legislative history on this matter simply tracks the language of the Bankruptcy Code and thus provides no further insight than the text of the Hanging Paragraph. *See Brown*, 346 B.R. at 874 ("The *Ezell* court did a thorough review of the sparse legislative history on this matter, and concluded that Congress clearly intended to prevent bifurcation of the class of secured claims falling within the scope of the Hanging Paragraph." (citing *Ezell*, 338 B.R. at 341.)); *Green*, 348 B.R. at 609 (after quoting two passages from the Report of the Committee on the

---

intended to alter the pre-BAPCPA rights of a debtor under § 1325(a)(5)(B) without likewise altering the pre-BAPCPA rights of a creditor under § 1325(a)(5)(C). Quite simply, "it is illogical to conclude that the . . . Hanging Paragraph means something different in different contexts." *Brown*, 346 B.R. at 875.

In addition, "every . . . party to a bankruptcy case[] [has] to take both the good and the bad." *Id.* The Hanging Paragraph "offer[s] significant protection to secured creditors by not allowing debtors to retain recently purchased vehicles while only paying a fraction of what is owed." *Id.* It is "entirely logical" that Congress also intended to benefit unsecured creditors by preventing "the fully secured 910 claim creditor . . . from sharing in the distribution to unsecured creditors." *Id.*

8

Judiciary, House of Representatives, noting that "[n]either of these passages does any more to enlighten [the courts] about legislative intent than the text of the [H]anging [P]aragraph; they simply paraphrase the statute").

The plain language of the Hanging Paragraph is unambiguous and eliminates § 506 bifurcation of all 910-claims. The Court is not persuaded by any of GMAC's arguments to the contrary,[7] and finds, therefore, that Carter's proposed surrender of the Vehicle in full satisfaction of GMAC's fully secured claim is authorized under § 1325(a)(5)(C) of the Bankruptcy Code. Accordingly, this Court joins "the vast majority of reported cases favor[ing] the position . . . that the 910 car creditor can, through the confirmation of a proposed plan, be compelled to accept the surrender of its collateral in full satisfaction of its claim." *In re Vanduyn*, 374 B.R. 896, 899 (Bankr. M.D. Fla. 2007) (internal quotation marks and citation omitted).

---

[7] GMAC's final argument is that the bankruptcy court's interpretation of the Hanging Paragraph "has serious constitutional issues under the Fifth Amendment" because "the Fifth Amendment forbids the destruction of a contract." (Br. of Appellant GMAC 24 (quoting *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 452 (1937)).) However, since "[b]ankruptcy laws have long been construed to authorize the impairment of contractual obligations[,]" the Court is satisfied that a bankruptcy court may determine and limit the value of a secured creditor's claim without running afoul of the Fifth Amendment. *In re Nichols*, 440 F.3d 850, 854 (6th Cir. 2006); *accord In re Lanier*, 372 B.R. 727, 728-29 (Bankr. M.D. Pa. 2007); *In re Kerwin-White*, 129 B.R. 375, 384 n.9 (Bankr. D. Vt. 1991).

CONCLUSION

For reasons stated herein, this Court affirms the bankruptcy court's ruling.


IT IS SO ORDERED, this 11th day of February, 2008.


                                              S/Clay D. Land
                                                        CLAY D. LAND
                                       UNITED STATES DISTRICT JUDGE